Zinn v. Brinkerhoff.

---

CHARLES A. ZINN et al.

*v.*

JAMES D. BRINKERHOFF et al.

1. When a creditor, who became such subsequent to the execution of a voluntary conveyance made by his debtor, attacks the conveyance as void by the statute of frauds, the burden is upon him of showing that the actual intent existed, in the mind of the parties to the conveyance, at the time of its execution, to hinder, delay or defraud creditors.

2. In ascertaining if such fraud, in fact, existed, if the condition of insolvency enters into the question, the elements, popularly recognized as constituting insolvency, are to be considered, rather than those which are adopted by the courts, as indicative of insolvency, in cases of fraud regarded as a conclusion of law.

On bill, answers, replication and proofs taken in open court.

*Mr. Edward A. Day* and *Mr. Milton Demarest,* for the complainants.

*Mr. Luther Shafer* and *Mr. William Brinkerhoff,* for the defendants, Abraham S. Brinkerhoff and James Dowling.

GREEN, V. C.

The bill in this cause was filed by Charles A. Zinn and George W. Albere, partners, under the firm name of Charles A. Zinn & Co. It is a creditor's bill, in aid of execution issued on a judgment obtained by them December 27th, 1889, in the circuit

court of Bergen county against one James D. Brinkerhoff for $797.81 damages and costs, which execution had been levied by the sheriff of Bergen county December 27th, 1889, on certain goods and chattels in the possession of the defendant, and on his interest in four tracts of land.

The object of the suit, as gathered from the prayer for relief, is to set aside, as fraudulent and void, as against the complainants, a mortgage given by James D. Brinkerhoff to Abraham S. Brinkerhoff on the real estate levied on, dated September 16th, 1889, to secure the sum of $4,500, as well as an alleged chattel mortgage of the same date on certain personal property levied on, said to have been given by the said James D. Brinkerhoff to the said Abraham S. Brinkerhoff to secure the said sum of $4,500, and, also, a chattel mortgage given by the same to the same for the same amount on the same property, dated December 13th, 1889, and filed in Bergen county clerk's office December 16th, 1889, and to postpone, in favor of complainants' judgment, a judgment obtained against James D. Brinkerhoff and Abraham S. Brinkerhoff by Charles Burkhalter and John H. Burkhalter, recovered in the Bergen county circuit court December 23d, 1889, for $738.59, under which there had been a levy made by the sheriff prior to the levy under complainants' judgment, and which it was alleged had been paid by James Dowling, one of the defendants to this suit, and kept on foot for the purpose of defrauding the complainants.

The real estate mortgage and the chattel mortgage of December 13th, 1889, had been assigned by Abraham S. Brinkerhoff to James Dowling, who also held an assignment of the Burkhalter judgment.

James D. Brinkerhoff, Abraham S. Brinkerhoff, James Dowling, and numerous judgment creditors of James D. Brinkerhoff, and two judgment creditors of James D. & Abraham S. Brinkerhoff, partners, on whose several judgments execution had been issued, and levies made on the property involved in the suit, were made parties defendant.

The bill prayed that the several mortgages be declared fraudulent and void, and set aside, and that complainants' lien be pre-

Zinn v. Brinkerhoff.

ferred to the Burkhalter judgment, and for an account of property sold by the defendants, and that a receiver be appointed to take possession and sell, and from the money arising from such sale to pay complainants' judgment, and the other valid judgments against James D. Brinkerhoff and Abraham S. Brinkerhoff, according to their legal priority, and for an injunction against Abraham S. Brinkerhoff and James Dowling from taking possession of the goods and chattels, by virtue of the said chattel mortgage, and from selling and disposing of the same, and restraining the sheriff from selling by virtue of the execution issued on the Burkhalter judgment, or any other execution, until the further order of the court.

On filing the bill, on January 2d, 1890, an order was made by the chancellor, directing the defendant to show cause why an injunction should not issue, and a receiver be appointed according to the prayer of the bill, with a restraining order in the meanwhile.

Application was made by counsel for the defendants Brinkerhoff and Dowling, for the immediate sale of perishable property, all parties being represented on the motion.

The chancellor, on January 6th, 1890, appointed Thomas W. Alyea receiver in the cause, to take possession of the goods, fixtures, horses, wagons, coal yard, and all the goods and chattels of James D. Brinkerhoff, and all his books of account, including the books of account of the old firm of Brinkerhoff Brothers, and the real estate of James D. Brinkerhoff; and to sell and dispose of the personal property in the best manner and for the best price he could obtain, either at private or public sale; and also to collect all moneys due and to grow due on the book accounts of James D. Brinkerhoff and Brinkerhoff Brothers.

Under this order the receiver took possession of and sold the personal property, and made certain collections of the debts on the books.

Answers were filed by the defendants Abraham S. Brinkerhoff, James Dowling, James D. Brinkerhoff and Abraham D. Campbell.

The receiver filed his report on the 28th day of July, 1890, which was referred to George W. Cassedy, Esq., for audit and report thereon.

The claim of the original complainants having been satisfied, Abraham S. Swords and Joseph B. Dixon, partners, and the Lehigh Valley Coal Company, who were judgment creditors of James D. Brinkerhoff, and defendants in the suit, were, on petition, order to show cause, and hearing, admitted as parties complainant, and allowed to prosecute the same in their own behalf, on indemnifying the original complainants against all costs. The receiver was also continued, and directed to continue in possession, and to pay interest falling due, as well as taxes, and further proceedings before the master on the receiver's report were stayed.

The cause was regularly set down for hearing, and was tried in the presence of counsel of Swords & Dixon, the Lehigh Valley Coal Company and Abraham S. Brinkerhoff and James Dowling.

James D. Brinkerhoff and Abraham S. Brinkerhoff are brothers, and were formerly in partnership and carried on a general store business, at Rutherford, for some nine years.

James D. was sheriff of the county of Bergen at one time; his public duties requiring his absence from the business, led to a readjustment of their interests in the profits, on an unequal basis, and produced, as it would seem, dissatisfaction on the part of his brother Abraham to continue in business with him, and ultimately brought about a dissolution of the copartnership on the 16th of September, 1889.

This was effected by James buying the interest of Abraham in the concern, for the consideration of $4,500, and assuming the payment of the debts of the firm. No money was paid, but the notes of James for the full amount of the purchase, each of $300, and maturing at periods of three months from each other, were given.

James and his wife gave to Abraham a mortgage on his real estate to secure the payment of these notes, which mortgage is dated on the 16th of September, 1889, and was immediately put

upon the record.    He also agreed to give to his brother a chattel mortgage upon the personal property.

There is some question as to whether such a chattel mortgage was executed at that time.    One or more appear to have been drawn, but the witnesses are not in accord on the point as to whether these chattel mortgages, or either of them, were then executed by James or delivered to Abraham.

The point of the matter rests in the allegation, made by James, that it was a part of the agreement to give this chattel mortgage ; that it should not be put upon the record, but should be held by his brother to be used only in case James's creditors pressed him.    That any such agreement was made is expressly denied by Abraham and by his counsel.

James, immediately on the dissolution, took possession of the store and premises and stock of goods, and continued the business in his own name, purchased other goods of firms that they had formerly dealt with, until about the commencement of December, when suits were threatened and commenced by the creditors, and by creditors of the former firm.

Abraham then demanded a chattel mortgage from James, and the chattel mortgage of December 13th, 1889, was given.

It is on condition to pay the sum of $4,500 with interest, according to the tenor and true intent of fifteen certain promissory notes of $300 each, which were the notes given by James to his brother for the purchase of his interest in the business.

The mortgage contained a clause that it should become due on the failure to pay any one of the notes, and embraced the goods and chattels and the book accounts of James D. Brinkerhoff. This mortgage was, as soon as possible, and, on December 16th, 1889, put upon the record.

The transaction is attacked, first, on the ground that on the 16th of September, 1889, when the firm was dissolved, and Abraham transferred his interest in the property to James D., and James D. encumbered his estate, the firm of Brinkerhoff Brothers was insolvent, and that the transfer, for no other consideration than the notes of one of the parties, was a voluntary transfer, and, as such, void as to creditors.

It may, for the purposes of this point, be conceded that the firm was insolvent, as that term is defined in equity, and that the transfer of all the assets by the one partner to the other, the firm being insolvent, taking therefor nothing but the purchasing partners notes, is a voluntary transfer, and, as such, void as against existing creditors of the firm; but neither the original complainant nor the two prosecuting complainants, Swords & Dixon and the Lehigh Valley Coal Company, are creditors of the firm of Brinkerhoff Brothers. Their judgments are against James D. Brinkerhoff—that the transaction was invalid against the creditors of the firm of Brinkerhoff Brothers, does not establish the contention, that it was not good as against the creditors of James D. Brinkerhoff.

It is urged, that a transfer can be avoided by subsequent creditors, on the ground that the conveyance was a voluntary conveyance, if such subsequent creditors show, that at the time of the trial the debtors owed debts, which existed at the time the voluntary conveyance was made. There are cases which go to this extent. But the contrary must be regarded as the settled law of this state. The court of appeals, in *Hagerman* v. *Buchanan, 18 Stew. Eq. 292,* held, that when a creditor, who became such, subsequent to the execution of a voluntary conveyance, made by his debtor, attacks the conveyance as void, by the operation of the statute of frauds, the burden is upon him, of showing, that the actual intent existed, in the minds of the parties to the conveyance, at the time of its execution, to hinder, delay or defraud creditors. This is followed in this court in *Gardner* v. *Kleinke, 1 Dick. Ch. Rep. 90.*

It is therefore necessary for these complainants, Swords & Dixon and the Lehigh Valley Coal Company, to prove that there was actual fraud in the transaction, which resulted in the pledge by James to Abraham, of property which they seek to reach with their execution.

The firm of Brinkerhoff Brothers, had been formed by these parties, to continue a business which had formerly been carried on by Abraham S., in Rutherford—extended, it may be, in its scope and operation, but carried on in the same locality.

Abraham alleges, that he became dissatisfied with the manner in which his brother James conducted himself, and the lack of attention he paid to the affairs of the copartnership, and that he, on various occasions, expressed to his brother this dissatisfaction, and proposed, that an amount should be fixed upon, for the sale of the business, on the principle of give or take.   While they seemed to have commenced business on an equal basis, it appears by the accounts, that their capital accounts, as partners, on the 1st of January, 1888, stood as follows :

To the credit of Abraham S...................................................... $7,065 19
To the credit of James D....................................................... 4,074 88

Whether or not there was any material change in their relative capital accounts on the 1st of January, 1889, does not appear from the books.   It appears that some statement was made which is not produced.   Abraham explains the failure to produce some papers, by the fact that his safe was robbed by an expert burglar, and a great many documents lost at the time.   James claims that he should have received credit for two items, but the testimony of Abraham subsequently given, with reference to the entries in the books, clearly shows, that so far as one item of $1,500 is concerned, the same had been credited to James.

It is, however, unnecessary, as between the parties, to fix with accuracy the exact state of capital account, in dollars and cents, as the parties proceeded and acted upon the ground, that a difference existed on the 1st of January, 1888, of $3,000 in favor of Abraham, which continued up to the 1st of January, 1889.

It appears by Abraham's testimony, that at that date, an account of stock was taken, the items of which appear in one of the books, giving the amount of capital stock, book accounts &c.

Negotiations were then commenced, looking to a purchase, or a sale, of the interests of one to the other, but nothing definite was settled upon, until September, 1889, when Abraham, insisted upon some arrangement being made, to effect a dissolution.

An inventory was made, showing the amount of stock and book accounts and liabilities, by which it appeared as follows :

Zinn *v.* Brinkerhoff.

| | | |
|---|---:|---:|
| Book accounts, including bills receivable, estimated at | $10,262 | 38 |
| Cash | 145 | 87 |
| Stock and fixtures &c | 8,624 | 00 |
| | $19,032 | 25 |
| The liabilities were | 9,822 | 60 |
| Showing an apparent balance to the credit of the partnership of | $9,209 | 65 |

On this Abraham offered to give his brother $1,500 and assume the payment of the debts, or to take from his brother $4,500 and James to assume the payment of the debts.

This offer was made on the basis of there being a balance of $6,000 of good assets, over and above liabilities; that Abraham was entitled to $3,000 more than James, on capital account, which would leave $3,000 to be divided equally between them, making Abraham's interest $4,500 and James's $1,500.

This settlement was accepted by the parties, and was carried out, James D. taking possession, and giving his notes and the mortgage. There is no evidence which seriously impeaches the fairness, or accuracy of the figures, and estimates, which form the basis of the transaction.

While it is true that the firm might have been considered insolvent, in the sense, that they did not have cash on hand to meet any payment which might be demanded on that day, and which would control, if the insolvency involved voluntary transactions injurious to existing creditors, I think, in the determination of the question, as to the existence of actual fraud, in which the intention of parties figures so largely, if it is not the essential consideration, we are to be guided, as to insolvency, rather by the relative amount of available assets, and the amount of liabilities.

It being a conclusion of law, that a voluntary conveyance is of itself fraudulent as against existing creditors, it is right to prescribe some uniform test, as to what constitutes a voluntary conveyance, and establish fixed terms for certain conditions, such as insolvency, but such terms, if different from their usual acceptation, are not necessarily to be applied in other cases, and when it is necessary to prove that actual fraud existed, and the condition of insolvency enters into the question, I think we must be guided by the elements which constitute that condition, popularly recog-

Zinn v. Brinkerhoff.

nized, by the term "insolvent," rather than those which have been adopted by the courts, as indicative of insolvency, in cases of fraud as a conclusion of law. Taking the word in its ordinary signification, this firm was entirely solvent, if reliance can be placed upon the inventory and estimates, which were made with a view to this transaction. After giving a liberal discount of over $3,000 for claims which might not be collected, it left a surplus of $6,000 to the credit of the concern.

The complainants, on the trial, practically abandoned their attack upon the real estate mortgage, given by James to Abraham. It was notice to all the world of the facts recited in it, and it does recite that James was justly indebted to Abraham in the sum of $4,500, secured by a bond, conditioned for the payment of that amount, with interest, according to the tenor and effect of fifteen promissory notes, each bearing even date with said mortgage, and payable, at periods running from three to forty-five months, given by James to Abraham, with the condition that if default should be made in the payment of any of them, and remain unpaid for twenty days, the whole amount should become due at the option of Abraham.

Any person trusting James, after that mortgage went upon the record, did so, in the eyes of the law, with full notice of his indebtedness to Abraham, of this amount. There was no secrecy and no attempt to conceal. The mortgage was given on the 16th of September, 1889, and placed upon the record on the 18th. There is no evidence to show, that there was not a complete change of possession, and Abraham states, that he ceased his connection with the business, actual as well as legal, on the consummation of this arrangement with his brother. The bill charges, and an attempt was made to prove, that Abraham had secured credit for his brother, by representations with reference to his solvency, but no satisfactory proof of such representation was produced, and so far as these complainants are concerned, there was an entire failure to establish such contention.

. It is said, that the transaction was fraudulent, not only against the creditors of Brinkerhoff Brothers, but also, as against subsequent creditors of James D., because there was an agreement

between these parties, that a chattel mortgage should be given by James to Abraham, nominally to secure the payment of the $4,500 of notes, which mortgage, was to be kept off of the record until James was pressed by his creditors.

As intimated before, there is much dispute as to this point, but we have the fact that no chattel mortgage executed on the 16th of September, 1889, was in fact, used by Abraham or his assignee, to interfere with the other creditors. A mortgage was given on the 13th of December, 1889, which covered all of the goods and chattels of James, connected with the store, together with the book accounts. If Abraham was a *bona fide* creditor of James to the amount of $4,500, James, although in failing circumstances, unquestionably had the right to honestly prefer Abraham over his other creditors; this is well settled in this state.

If it be conceded that the mortgage of December 13th, 1889, would be fraudulent, if given in place of one given September 16th, 1889, under an agreement, not to put the same on record unless James was pressed by his creditors, the evidence does not satisfactorily establish any such agreement. The burden of proof is on the complainants; Abraham and Mr. Shafer positively deny it, James as positively asserts it. Mr. Van Cleve, while certain that a chattel mortgage was executed September 16th, 1889, does not say that it was tainted by any such agreement. It does appear that James, by the terms of the dissolution, was to pay the debts of the partnership, and was to give another real estate mortgage and another chattel mortgage to secure Abraham against liability for firm debts, the payment of which James so assumed, and that these mortgages were to be held by Mr. Shafer in escrow, but the arrangement was not consummated, as Mrs. James Brinkerhoff declined to execute the real estate mortgage. It is entirely probable that the agreement, as to these mortgages, has been by mistake, applied to the other, which will explain this discrepancy in the testimony, without imputing perjury to any one.

I am unable to find from the evidence that the mortgage of December 13th, 1889, was not honestly given to secure Abraham as a preferred creditor.

Abraham had, in his former business, been associated with another gentleman as partner, and had borrowed from his father-in-law, James Dowling, money which he had invested in the business, giving his father-in-law his note therefor, upon which he regularly paid the interest. On his forming a copartnership with his brother, he made a further loan from his father-in-law, and gave him therefor another note, upon which he also regularly paid the interest. These two notes were subsequently merged into one of $2,000, and upon the indebtedness, interest was paid, up to the 1st of October, 1890.

There is no evidence whatever to impeach, either the amount or the good faith of the claim, made by the defendant James Dowling against Abraham S. Brinkerhoff.

It appears, that the notes and the real estate and chattel mortgages, were assigned to James Dowling by Abraham S. as collateral securities for his debt of $2,000. And it further appears, that Dowling has received on account of his claim $1,051.89. Part of this amount, is money received from certain notes of customers, given by James to Abraham, and by him transferred to Dowling. It is insisted that these notes were given to take up the Burkhalter judgment, and that they have been misapplied to the Dowling claim. Dowling holds an assignment of that judgment, as well as of the mortgages, and it is not perceived, how the complainants are injured, by the application of this amount to the one claim, rather than the other, as both are prior to the judgments of the complainants. Dowling is entitled to hold his collaterals, for the settlement of the amount due him, and the difference, between that amount, and the $4,500 and interest on it, would belong to Abraham S. The latter is liable on judgments obtained against Brinkerhoff Brothers, and those judgment creditors, would be entitled to be next paid, and any balance remaining of the $4,500 should go to Abraham S. individually. The receiver has collected $6,192.98, and has disbursed $1,012.73, leaving a balance on hand, at the time of his report, of $5,180.25.

This would indicate, that the personal property covered by the chattel mortgage, has been sufficient to discharge the indebtedness

of $4,500, and the real estate mortgage, which was also given to secure the same debt, should, if such is the case, be canceled, and the injunction in this case dissolved, so that the judgment creditors, can proceed with their legal remedies, unimpeded by such mortgage. Of course, any balance remaining in the hands of a receiver, should be appropriated to the payment of the judgments, in the order of their priority.

The order, staying the further proceedings before the master, should be set aside, and he should proceed to state the account as directed.